## BECKETT v. UNITED STATES.

### ROSS v. SAME.

#### Nos. 7372, 7393.

Circuit Court of Appeals, Sixth Circuit.

June 30, 1936.

J. T. Settle, of Memphis, Tenn., for appellants.

C. P. J. Mooney, of Memphis, Tenn. (William McClanahan, of Memphis, Tenn., on the brief), for appellee.

Before MOORMAN, HICKS, and SIMONS, Circuit Judges.

SIMONS, Circuit Judge.

The appellants were severally tried and convicted, each upon a series of indictments charging the use of the mails in a scheme to defraud in violation of section 338, title 18 U.S.C.A., and another series charging conspiracies to violate the same statute. There were ten indictments against Beckett. He had two trials, one upon an indictment charging a substantive offense consolidated with a conspiracy indictment growing out of the same circumstances, and the other upon four indictments charging substantive offenses and four indictments charging conspiracies to commit them, all consolidated. He was convicted in each trial upon all indictments therein involved. Ross had one trial in which were consolidated three indictments charging substantive offenses and three indictments charging conspiracies to commit them. He likewise was convicted upon all indictments involved. The aggregate sentence imposed upon Beckett was confinement in a federal penitentiary for a period of twenty-five years and a fine of $22,000. The penitentiary sentence was arrived at by cumulating the maximum permissible terms for each substantive offense and providing that the sentence for each conspiracy, likewise imposed at the permissible maximum, be served concurrently with the term for the corresponding substantive offense. The aggregate sentence in the case of Ross was twenty-one years and a fine of $14,000. The penitentiary sentence in the case of Ross was ar-

rived at by cumulating not only the maximum penalty for each substantive offense, but likewise the maximum penalty for each conspiracy. The issues in the two appeals are identical, and they were argued together. They will be disposed of in a single opinion.

No complaint is made of the fairness of the trials, nor of the failure of the evidence to support the verdict of the jury. The grievances are that the court failed to allow each defendant ten peremptory challenges for each indictment, failed to quash the venire because negroes were not drawn for jury service from some of the counties of the district, because the sentences are cruel, unusual, and excessive, in violation of the Eighth Amendment to the Constitution of the United States, and because the defendants were denied the equal protection of the law in that their codefendants who had pleaded guilty were dealt with more leniently, and because the court erroneously consolidated the indictments for trial.

■ The complaint as to the consolidation of the indictments is clearly without merit. Such consolidation is authorized by statute, 18 U.S.C. § 557 [18 U.S.C.A. § 557]; cf. Hostetter v. United States, 16 F. (2d) 921 (C.C.A.8). The transactions out of which the indictments arose were all of the same character and each defendant was tried alone. No prejudice could therefore arise as in Castellini v. United States, 64 F.(2d) 636 (C.C.A.6). Equally without merit is the contention with respect to the challenges. The purpose of consolidation is the saving of time to the court and of time and expense to persons accused. No good reason appears why the permissible number of challenges in a criminal case allowed to the defendant by statute, 28 U.S.C. § 424 (28 U.S.C.A. § 424), should be cumulated for each indictment or for each count in the consolidated case. Kettenbach v. United States, 202 F. 377 (C.C.A.9); Solomon v. United States, 297 F. 82 (C.C.A.1).

■ The motion to quash the trial venire was properly denied. By federal statute, section 411, Title 28, U.S.C.A., jurors in federal courts must respond to the same qualifications as are provided for jurors in state courts by local law, subject to the provision (section 415, Title 28 U.S.C. [28 U.S.C.A. § 415]) that there shall be no discrimination against them by reason of race or color. The Tennessee statute, § 10006,

1932 Code, is fair on its face, and its validity is not impeached. The appellants wholly failed to produce any substantial evidence to establish a practice of systematic and arbitrary exclusion of negro citizens from jury service. The proofs affirmatively show that a substantial number of colored citizens of the district were on the jury list. The fact that none were drawn for trial is, of course, not controlling. The appellants rest their case for discrimination primarily upon the fact that no negro jurors were drawn from six counties of the district which the federal census shows are predominantly negro in population. We know of no statutory or constitutional mandate which requires proportional representation upon jury lists of racial, religious, political, or occupational groups within the district. Such requirement is not imperative to the drawing of a fair and impartial jury, would make impossible the functioning of the court, and nullify the constitutional imperative that commands a speedy trial. Neither in cases dealing with alleged discrimination against colored citizens as jurors in state courts nor in federal courts is found any principle to sustain the grievance here in respect to the venire. Norris v. Alabama, 294 U.S. 587, 55 S.Ct. 579, 79 L.Ed. 1074; Thomas v. Texas, 212 U.S. 278, 29 S.Ct. 393, 53 L. Ed. 512; Ruthenberg v. United States, 245 U.S. 480, 481, 38 S.Ct. 168, 62 L.Ed. 414; Younge v. United States, 242 F. 788 (C.C.A.4); Mamaux v. United States, 264 F. 816 (C.C.A.6).

■ The severity of the sentences has given us much concern. Beckett is forty-seven years old, and Ross is fifty-two. Both are negro physicians. The scheme to defraud by the use of the mails involved false death certificates made by each whereby money was fraudulently obtained from insurance companies. The appellants did not originate the scheme, but were induced to become participants by white insurance solicitors, who themselves, by pleas of guilty, escaped with comparatively moderate sentences. It is pointed out that of the money obtained Beckett received about $1,200 and Ross about $800; that the crimes were not crimes of violence; that the sentences equaled those usually imposed upon bank robbers, kidnappers, and the like, and to this we might add that they were greater than those frequently imposed for homicide less than the crime of murder. Nevertheless, we find our-

selves powerless to intervene. Badders v. United States, 240 U.S. 391, 36 S.Ct. 367, 60 L.Ed. 706; Ebeling v. Morgan, 237 U. S. 625, 35 S.Ct. 710, 59 L.Ed. 1151; Howard v. Fleming, 191 U.S. 126, 24 S.Ct. 49, 48 L.Ed. 121; In re Kemmler, 136 U.S. 436, 10 S.Ct. 930, 34 L.Ed. 519. The statutes neither are nor may be assailed, and the discretion conferred by them in respect to sentence·is one vested in the sentencing judge and not in a reviewing court. True it is that the Supreme Court of the United States, though recognizing that the phrase "cruel and unusual punishment" has never been precisely defined, and refusing itself to define it, except as an evolving concept, has said in respect to punishment scarcely more drastic than here imposed and for crimes equally heinous, "It must be confessed that they [statutory provisions], and the sentence in this case, excite wonder in minds accustomed to a more considerate adaptation of punishment to the degree of crime," and that, "Such penalties for such offenses amaze those who have formed their conception of the relation of a state to even its offending citizens from the practice of the American commonwealths, and believe that it is a precept of justice that punishment for crime should be graduated and proportioned to offense." Weems v. United States, 217 U.S. 349, 366, 367, 30 S.Ct. 544, 548, 54 L.Ed. 793, 19 Ann. Cas. 705. But the court was dealing with the constitutional validity of the act rather than with any abuse of the court's permissible discretion under it. True it is also that courts have in no uncertain terms condemned the practice of cumulating sentences where "It appears to us that the maximum sentence prescribed by Congress is intended to cover the whole substantive offense in its extremest degree, no matter in how many different ways a draughtsman may plead it, and even though he add a count for conspiracy, that darling of the modern prosecutor's nursery." Harrison v. United States, 7 F.(2d) 259, 263 (C.C. A.2). Cf. Nash v. United States, 54 F. (2d) 1006 (C.C.A.2); Hartson v. United States, 14 F.(2d) 561 (C.C.A.2); Amendola v. United States, 17 F.(2d) 529 (C. C.A.). Such practice is, however, not error. Chadwick v. United States, 141 F. 225 (C.C.A.6). There are doubtless occasions where it is justified, and so the power should not be denied, though caution and moderation must needs rule its exercise. In the present instance, the court was undoubtedly swayed by local conditions which we are here not able to evaluate, and by the fact that the appellants had perhaps committed deliberate perjury to escape the penalty of their crimes. How commendable the last consideration may be without trial for the specific offense, we are not called upon to say. While from undue judicial lenity there is no escape, for undue harshness there is fortunately amelioration. It rests, however, with the pardoning power of the Executive, and not with the courts.

Judgments affirmed.