Russell ROUSH, Petitioner,

v.

Robert WHITE, Respondent.

Civ. A. No. C 73–1151 Y.

United States District Court,
N. D. Ohio, E. D.

Feb. 6, 1975.

Timothy J., Potts, Summers, Schneider, Burke & Hildebrand, Cleveland, Ohio, for petitioner.

William J. Brown, Atty. Gen., Simon B. Karas, Asst. Atty. Gen., Columbus, Ohio, for respondent.

## MEMORANDUM OPINION AND ORDER

CONTIE, District Judge.

Russell Roush has petitioned the Court for habeas corpus relief. His applica-

tion to proceed in forma pauperis has been granted. An evidentiary hearing was held on June 19, 1974. Oral arguments were heard on October 10, 1974.

In the early morning of July 17, 1971, Frank Grosse, a Stark County Deputy Sheriff working as an undercover agent in the Narcotics Unit, purchased from Charles Tawney certain substances which were represented to be LSD and hashish. When asked about marijuana, Tawney told Grosse that they were expecting a shipment the next day, and invited him back then.

Grosse disclosed his activities to the Tuscarawas County Narcotics Enforcement team. A search warrant was obtained and arrangements for a raid upon Tawney's residence were completed.

Pursuant to his invitation, Grosse returned to the Tawney residence. He offered to buy marijuana if it was of good quality. Grady Hudspeth reached into his pocket and then handed a cigarette to petitioner. Petitioner lit the cigarette and handed it to Grosse. Grosse acknowledged its quality.

Thereupon Grosse and Tawney negotiated a price for the drugs to be purchased. They agreed upon $39.00 as the purchase price. Grosse tendered two twenty dollar bills. When Tawney said that he didn't have change, petitioner reached into his pocket, pulled out a one dollar bill, and handed it to Grosse as the change. Tawney kept the two twenty dollar bills. Grosse took the one dollar bill and received two bags of marijuana, one small packet of hashish, and one capsule of what purported to be chocolate mescaline. Thereafter the waiting officers entered and arrested Tawney, Hudspeth and petitioner. The two bags were later found to weigh 39.6 grams, a little over one ounce, and contained marijuana. The other bag did contain hashish. The capsule was found to contain no abusive drug. Additional quantities of marijuana were found on the premises.

The Grand Jury, September 1971 Term, of Tuscarawas County, Ohio, in-

dicted petitioner for the crimes of possession of an hallucinogen for sale, sale of an hallucinogen, and aiding and abetting the sale of an hallucinogen, in violation, respectively, of § 3719.41, § 3719.44(B), § 3719.44(D) and § 3719.47, Ohio Revised Code. Petitioner entered a plea of not guilty to all counts of the indictment.

Petitioner was found guilty by a jury of aiding and abetting the possession of an hallucinogen for sale and the sale of an hallucinogen. He was sentenced, on March 22, 1972, to a term in the Ohio State Reformatory for from ten (10) to twenty (20) years on the charge of possession of an hallucinogen for sale; the prison sentence imposed on the charge of sale of an hallucinogen was suspended on condition that petitioner be placed on probation for five years subsequent to his release from the Ohio State Reformatory.

The testimony of Dr. J. Thomas Ungerleider was introduced at the evidentiary hearing. Dr. Ungerleider was a member of the National Commission on Marijuana and Drug Abuse. His testimony concerned his work on the Commission, the recommendations of the Commission and the factual basis for those recommendations. He also testified concerning his own professional experience in studying marijuana and its uses. A copy of the Commission's first report, *Marijuana: A Signal of Misunderstanding,* was received into evidence; this report basically contains Dr. Ungerleider's testimony.

In support of his application for a Writ of Habeas Corpus, Roush advances the following grounds:

(1) "The classification of marijuana with dangerous drugs violates the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment to the United States Constitution, because the statutory classification is not based upon differences that are reasonably related to the purpose of the statute.

(2) "Where a criminal statutory scheme arbitrarily classifies marijuana with harmful drugs (hallucinogens) and prescribes the same penalties for narcotics offenses as for marijuana offenses, said statutes subject a defendant convicted for aiding and abetting in the sale and possession for sale of marijuana to discriminatory penalties in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

(3) "The state statutory scheme under which petitioner was convicted violates the Equal Protection Clause of the Fourteenth Amendment in that it confers unfettered discretion upon the prosecutor to choose among three different statutes which proscribe the identical act but which carry vastly different sentences.

(4) "Section 3719.44(B) of the Ohio Revised Code is unconstitutionally vague.

(5) "Section 3719.99 of the Ohio Revised Code violates the Cruel and Unusual Punishment provision of the Eighth Amendment to the United States Constitution.

(6) "The trial court's denial of a motion to suppress evidence obtained pursuant to a search warrant, supported by an affidavit based on hearsay information, which affidavit fails to state the underlying circumstances necessary to enable the magistrate who issued the warrant to evaluate the informant's conclusions, and also fails to state facts establishing the credibility of the informant, infringes the accused's rights under the Fourth Amendment to the United States Constitution
.  .  . .

(7) "In charging the jury concerning the law applicable to the case, the [trial] court relieved the State of the burden of proving guilt

beyond a reasonable doubt and imposed the burden of establishing innocence upon the petitioner in violation of the Due Process Clause of the Fifth and Fourteenth Amendments."

## EXHAUSTION OF STATE REMEDIES

■ Initially, the Court will consider respondent's assertion that petitioner has failed to exhaust his available state remedies as to grounds four, five and seven. The Court finds that petitioner has not presented grounds four and seven to the Ohio courts. Thus, as petitioner has available the right to a delayed appeal under Ohio law, Bussey v. Maxwell, 362 F.2d 973 (6th Cir. 1966), the Court is without jurisdiction as to these grounds. See Harris v. Cardwell, 447 F.2d 1339 (6th Cir. 1971).

However, as to ground five, which challenges Section 3719.99 of the Ohio Revised Code as being violative of the Cruel and Unusual Punishment clause of the Eighth Amendment, the Court finds that it has been presented to the Ohio courts.

■ Respondent argues that, since in this court petitioner is advancing additional theories to substantiate this ground, the state courts have not had a full and fair chance to rule upon it. However, respondent has presented to this Court no evidence concerning exactly which arguments have been presented to the state courts; in the absence of a basis for rational evaluation of the exact extent of the state court's review regarding this issue, the Court will presume that the state court has been adequately apprised of the basis for this argument.

## GROUND ONE

■ Turning now to the grounds properly before the Court, the first ground for relief basically asserts that Ohio's classification of marijuana as a hallucinogen is contrary to current

scientific knowledge and therefore arbitrary.

"Normally, the widest discretion is allowed the legislative judgment in determining whether to attack some, rather than all, of the manifestations of the evil aimed at; and normally that judgment is given the benefit of every conceivable circumstance which might suffice to characterize the classification as reasonable rather than arbitrary and invidious." McLaughlin v. State of Florida, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964).

The only cases requiring a stricter standard of review are those that "involve an infringement of a right explicitly enunciated in the Constitution or otherwise recognized as fundamental." United States v. Kiffer, 477 F.2d 349, 352 (2nd Cir. 1973). As there is no fundamental right to sell marijuana, or possess it for sale, see United States v. Kiffer, *supra*, petitioner must establish that the classification of marijuana as a hallucinogen is arbitrary and unreasonable.

In People v. McCabe, 49 Ill.2d 338, 275 N.E.2d 407, 409 (1971), the Illinois Supreme Court ruled that the classification of marijuana as a narcotic rather than in the alternative stimulant and depressant category, was violative of that appellant's equal protection rights. This conclusion was predicated upon the court's conclusion that no factual basis existed upon which the Illinois Legislature could rationally have concluded that marijuana is narcotic, and therefore that said classification was arbitrary. In discussing the current scientific information available, the court stated that:

"The short-hand descriptive phrase most often applied to the drug is 'mild hallucinogen,' although this refers to only one of its many effects." 275 N.E.2d at 411.

The Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801 et seq., established the schedules of drugs to be controlled by protec-

tive legislation. A Schedule I classification is for drugs:

"1. With a high potential for abuse;
"2. With no currently accepted medical use and treatment in the United States; and
"3. Which lack safety for use under medical supervision." See 21 U.S.C. § 812.

Schedule I is divided into three categories, the last of which is hallucinogenic substances. Marijuana is listed as a Schedule I hallucinogenic substance. 21 C.F.R. § 1308.11(d); 21 U.S.C. § 812. This classification has been held to be valid. See United States v. Kiffer, *supra*; United States v. LaFroscia, 354 F.Supp. 1338 (1973).

Finally, on the basis of the facts presented to this Court, it concludes that there is a substantial basis, in fact, for classifying marijuana as a hallucinogen. The first report of the National Commission on Marijuana and Drug Abuse, *Marijuana: A Signal of Misunderstanding,* refers to marijuana as a psycho-active drug (see pages 57 and 84). A psycho-active drug is defined in that report as:

". . . any substance capable of modifying mental performance and individual behavior by inducing functional or pathological changes in the central nervous system." (page 49).

In the Commission's conclusions regarding immediate drug effects, it is stated at page 59:

"In summary, the immediate effect of marijuana on normal mental processes is a subtle alteration in state of consciousness probably related to a change in short term memory, mood, emotion and volition. This effect on the mind produces a varying influence on cognative and psychomotor task performance which is highly individualized, as well as related to dosage, time, complexity of a task and experience of the user. The effect on personal, social and vocational function is difficult to predict. In most instances, the marijuana intoxication is pleasurable. In rare

cases the experience may lead to unpleasant anxiety and panic, and in a predisposed few, to psychosis."

O.R.C. § 3719.40 defines hallucinogen to include among other specifically mentioned drugs, marijuana and "any other compound, mixture, preparation, or substance which produces hallucinations or illusions when introduced into the body."

An hallucination is defined, in part, by Webster's Third New International Dictionary, as:

"A perception of objects with no reality" and

"Experience of sensation with no external cause usu[ally] arising from disorder of the nervous system . . ."

■ Considering the broad leeway accorded to the legislature and the multiple effects of marijuana, the Court concludes that there is a reasonable basis for classifying marijuana as an hallucinogen. Whether there should be distinctions drawn between the varying hallucinogenic drugs is a matter for legislative judgment. Accordingly, petitioner's first ground must fail.

### GROUND TWO

Petitioner's second asserted ground for relief basically challenges the penalties provided for marijuana offenses under the Ohio Revised Code. It is asserted that these penalties are discriminatory and therefore in violation of the Equal Protection clause of the Fourteenth Amendment to the United States Constitution. As stated by petitioner, the penalties imposed for sale and possession for sale of marijuana violate the Equal Protection clause in three ways:

(a) They are much more severe than the penalties imposed for the sale of barbiturates and amphetamines;

(b) They are the same as the penalties for sale and possession for sale of a narcotic;

(c) Due to the arbitrary classification of marijuana as an hallucinogen

along with other more harmful drugs, the penalties for sale and possession for sale of marijuana are the same as for the same acts in connection with other hallucinogens, including LSD, an intrinsically more harmful drug.

It appears that these assertions are little more than additional arguments advanced to support petitioner's conclusion that marijuana is misclassified. However, for the sake of clarity, the Court will address each assertion separately.

■ The Court is of the opinion that, as regards the first asserted penalty violation, petitioner is basically asserting that a person convicted of violating a similar offense regarding amphetamines and barbiturates would have received a lesser sentence. This is not an equal protection problem. Petitioner is attempting to have the Court compare dissimilar offenses. If marijuana is properly categorized as an hallucinogen, a proposition which the Court has already affirmatively answered, then what the legislature establishes as a penalty for violation of laws relating to other rationally classified offenses is irrelevant. Taking the most expansive view of petitioner's first asserted penalty violation, the Court finds that its only relevance is in relation to the Cruel and Unusual Punishment clause of the Eighth Amendment; this issue will be discussed *infra*.

■ Petitioner's second asserted penalty violation is, basically stated, that if it is a violation of the Equal Protection clause to classify marijuana as a narcotic, see People v. McCabe, *supra*, then it must also be a violation of the Equal Protection clause to give the same penalty for sale or possession for sale of marijuana as for the same offenses regarding narcotics. In short, petitioner claims that if it is illegal to provide dissimilar treatment for persons similarly situated, it must also be a violation of the Equal Protection clause to give similar treatment to those dissimilarly situated.

This argument misconstrues the Equal Protection clause. That clause applies only where there is an arbitrary discrimination between classes similarly situated. No such situation here exists. Rather, the Court concludes that this attack has relevance only with reference to the Cruel and Unusual Punishment clause.

Petitioner's third alleged penalty violation merely restates his classification argument contained in the first ground. This issue has previously been resolved against petitioner by the Court.

## GROUND THREE

Petitioner's next ground for relief is that his equal protection rights have been violated because the prosecutor allegedly had discretion to choose among different statutes for prosecution of a marijuana offense. Specifically, these statutes are Ohio Revise Code Sections 3719.44(B), 3719.44(D), 3719.42 and 3719.43.

In pertinent part, O.R.C. § 3719.44 provides:

"No person shall:

.    .    .    .    .

"(B) Possess for sale any hallucinogen except in accordance with sections 3719.40 to 3719.49, inclusive, of the Revised Code . . .;

"(D) Sell, barter, exchange, or give away, or make offer thereof, any hallucinogen except in accordance with sections 3719.40 to 3719.49, inclusive, of the Revised Code; . . ."

O.R.C. § 3719.42 provides:

"No person shall, for the purpose of producing hallucinations, or illusions, or knowing an hallucinogen will be used for such purpose, manufacture, produce, cultivate, grow, prepare, sell, offer for sale, barter, give away, or

dispense an hallucinogen, or knowingly permit the same to be done on land owned, occupied, or controlled by him, without first obtaining a license as a manufacturer of hallucinogens from the state board of pharmacy. . ."

O.R.C. § 3719.43 provides:

"No person except a licensed pharmacist or owner of a pharmacy, or a manufacturer licensed under section 3719.42 of the Revised Code shall possess for sale, or sell, barter, exchange, dispense, give away, or make offer therefor, any hallucinogen without obtaining a license as a wholesaler of hallucinogens from the state board of pharmacy."

First, it is important to note that prosecutorial discretion, in and of itself, is not unconstitutional. See 16A C.J.S. Constitutional Law § 563, fn. 16.10. Only when that discretion is unfettered, when it is the prosecutor, not the legislature, enacting the laws, is the Constitution offended.[1] Thus, technically, the question is whether the above quoted statutes each prosecute the same acts.

Petitioner relies heavily upon the Supreme Court of Washington's decision in State v. Zornes, 469 P.2d 552 (1970). Therein, the court found that there was no basis for distinguishing between the conduct proscribed by the two drug statutes therein under consideration. As one statute charged a felony and one charged a misdemeanor, the *Zornes* court found an equal protection violation.

However, the decision rendered on petitioner's appeal to the Court of Appeals for the Fifth Judicial District of Ohio states, in pertinent part:

"The same is true of section 3719.43, Rev.Code, which relates to the failure of a wholesaler to obtain a license, behind which section one who could not qualify for license should not be

---

1. This discussion ignores, as irrelevant to the instant issue, the additional circumstance whereby selectivity in enforcement of criminal laws violates equal protection, where said selectivity is "deliberately based upon an unjustifiable standard such as race, religion or other arbitrary classification." Oyler v. Boyles, 368 U.S. 448 at 456, 82 S.Ct. 501 at 506, 7 L.Ed.2d 446 (1962).

given cover. We find the violations charged under section 3719.44(B) and (D), Rev.Code, not intended to be for the same acts as those charged under Sections 3719.41 and 3719.43, Rev. Code, and not to be for the same act committed under the same circumstances as contended by appellant and Assigned Error No. 3 is overruled." Ohio v. Roush, decided March 20, 1973.

Thus, Ohio has construed sections 3719.44(B) and (D) and 3719.43 as stating separate offenses. While the distinction established, that the person to be prosecuted must be one who could qualify for a license as a wholesaler, may be rather difficult to apply, the Court cannot find it to be arbitrary. The Court therefore finds that these sections do not proscribe the same act.

No decision by an Ohio court is before this Court which considers the differences between O.R.C. §§ 3719.44 and 3719.42. The petitioner has not presented this issue to the Ohio courts, and, therefore, petitioner has not exhausted his state remedies as to it. However, were the Court to consider this issue on its merits, the Court would feel compelled to construe O.R.C. § 3719.42 to apply only to persons qualified to obtain a license as a manufacturer of hallucinogens. Thus, there would also be a rational basis for distinguishing between 3719.44 and 3719.42, and these two sections would not state the same offense.

■ As the Court concludes that there is a rational distinction between these statutes, there is no Equal Protection violation presented therein.

### GROUND FIVE

Petitioner's next remaining ground for relief is that the penalties provided for sale and possession for sale of marijuana are violative of the Cruel and Unusual Punishment clause of the Eighth Amendment. The penalty provided by the Ohio Legislature for possession for sale of marijuana is ten to twenty years.

imprisonment. O.R.C. § 3719.99(D). The penalty for sale of marijuana is twenty to forty years imprisonment. O.R.C. § 3719.99(F).

■ The Cruel and Unusual Punishment clause is applicable to the states through the Due Process clause of the Fourteenth Amendment. Robinson v. State of California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962). However, what the Supreme Court said over sixty years ago is still true today: "[w]hat constitutes a cruel and unusual punishment has not been exactly decided." Weems v. United States, 217 U.S. 349, 368, 30 S.Ct. 544, 549, 54 L.Ed. 793 (1910). Yet it is clear that the "Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society". Trop v. Dulles, 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958); See also Weems v. United States, *supra.*

Reading petitioner's claims as broadly as possible, he argues that the penalties provided for violation of these two statutes are violative of the Eighth Amendment under the following tests:

1. The penalties are greatly disproportionate to the offense for which they are imposed; See Weems v. United States, *supra;* Robinson v. State of California, *supra;*

2. The punishment in question is shocking to the general conscience; See Lee v. Tahash, 352 F.2d 970 (8th Cir. 1965); Kasper v. Brittain, 245 F.2d 92 (6th Cir. 1957);

3. The penalties are arbitrarily imposed; See Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), (concurring opinion of Stewart, J.[2] and White, J.[3].)

To support his conclusions under the first test, petitioner characterizes the sale or possession for sale of marijuana as "demonstrably innocuous". Supple-

---

2. 408 U.S. at 307, 92 S.Ct. at 2760.

3. 408 U.S. at 311, 92 S.Ct. at 2763.

mental Brief for Petitioner, p. 16. Thus, he argues, a minimum sentence of ten years for possession for sale of marijuana and twenty years for sale of marijuana are vastly disproportional to the crime. However, analysis is not that simple. The evidence presented at hearing, including the first report of the National Commission on Marijuana and Drug Abuse, *Marijuana: A Signal of Misunderstanding,* simply does not substantiate petitioner's characterization.

As the National Commission on Marijuana and Drug Abuse stated in its first report:

> "Marijuana is not an innocuous drug. The clinical findings of impaired psychological function, carefully documented by medical specialists, legitimately arouse concern." *Marijuana: A Signal of Misunderstanding.* p. 90.

The National Commission further stated at page 91:

> "One of the factors we consider in Chapter V when evaluating the various social policy options and legal implementations is the effect of each policy on incidence and patterns of use. Regardless of how heavy this particular variable will weigh in that process, we must state that a significant variable in the at-risk population [heavy, long term users of marijuana] could convert what is now a minor public health concern in this country to one of major proportions."

Recognizing the relationship of the large scale sale of marijuana to a serious public health problem, the National Commission recommended that sale of marijuana remain a felony.[4] In summary, marijuana is not "demonstrably innocuous", and the sale and possession for sale of marijuana are serious offenses.

However, this conclusion does not, in and of itself, resolve the question of whether the relevant penalties are disproportionate to the gravity of the offense. That, of course, depends upon how serious these offenses are.

While there is some evidence before the Court supporting the conclusion that marijuana is comparatively harmless, there is also evidence that marijuana poses a public health problem of serious proportions. For example, the National Commission, in its first report, found that marijuana may cause psychosis and that it will cause behavioral changes in heavy, long term users. Furthermore, in hearings before the Senate Subcommittee on Internal Security, held on May 17 and 18 of 1974, see Congressional Record, Vol. 120, No. 110, July 24, 1974, evidence of scientific findings of startling import was disclosed. Therein reported were links between marijuana use and irreversible brain damage; cellular damage, including reduced DNA and RNA synthesis; damage to the reproductive systems; cancer; and various psychiatric conditions.[5]

---

4. It is important to emphasize that the penalty for mere possession of marijuana is not here in issue; rather, under consideration are the penalties for sale and possession for sale of marijuana. The relevance of this distinction is demonstrated by the recommendation of the National Commission that criminal sanctions for possession of marijuana in private and for casual distribution of small amounts of marijuana for no remuneration or insignificant remuneration be abrogated.
Although Ohio does not so distinguish between sales of small and large amounts of marijuana, as do other states, the Court concludes that if the penalties provided for sales of large amounts are not violative of the Eighth Amendment, then the Legislature

would be within its prerogative to conclude that sales of small amounts are also capable of seriously increasing the threat to the public health identified above, and thus constitutionally capable of imposing the same penalties for sale of small amounts as for the sale of large amounts.

5. The Court recognizes that part of the stated purpose of these hearings was to present the "other side"—the findings that marijuana is dangerous—of the marijuana controversy. While petitioner would have this Court dismiss the findings contained therein as "one-sided", the Court is of the opinion that it is the scientific evidence on marijuana which is in dispute, not the method of their publication. Therefore, the Court con-

This discussion reveals that substantial questions still remain regarding how serious the crimes of sale and possession for sale of marijuana are. This Court cannot resolve these conflicts in scientific opinion; their resolution is properly for the legislature. See United States v. LaFroscia, *supra.* As long as there is sufficient substantiating evidence so that the legislature's conclusions are not arbitrary, those conclusions—that marijuana poses a serious threat to the public health and that the sale of and possession for sale of marijuana are very serious crimes— must be upheld. As that evidence exists in this case, the Court can only conclude that these crimes are very serious and that the penalties therefor are not disproportionate.

The next test urged by petitioner is that the penalties imposed by these statutes are shocking to the general conscience. To adopt the language of the court in United States v. Rosenberg, 195 F.2d 583, 608 (1952):

". . . this test counts against the [petitioner], for it means that this court, before it reduces a sentence as 'cruel and unusual,' must have reasonably good assurances that the sentence offends the 'common conscience.' And, in any context, such a standard—the community's attitude—is usually an unknowable." (Footnotes omitted.)

The record contains no evidence which might be of aid to the Court in deciding what might be the community's attitude toward penalties for sale and possession for sale of marijuana. The Court is therefore unable to find that these penalties are shocking to the general conscience. See also State v. Chaffin, 30 Ohio St.2d 13, 282 N.E.2d 46 (1973).

Petitioner finally urges that the penalties provided by O.R.C. §§ 3719.99(D) and (F) are arbitrarily imposed. This test is concerned with the application of the penalty, not with the constitutionality of these sections on their face. Therefore, since petitioner was sentenced to less than the maximum sentence under O.R.C. § 3719.99(F), the penalty therein provided is not under review. See United States v. Dawson, 400 F.2d 194, 200 (2nd Cir. 1968); Beckett v. United States, 84 F.2d 731 (6th Cir. 1936). Thus, the question is whether the ten to twenty year sentence imposed on petitioner for violation of O.R.C. § 3719.44(B), possession for sale of marijuana, was arbitrarily imposed.

Basically, petitioner argues that very few people originally charged with violations of § 3719.44(B) ever go to jail. No comprehensive statistics are presented to support this conclusion. However, an article in the *Cleveland Plain Dealer* on May 26, 1974, discussing the disposition of the cases of 65 persons indicted on July 1, 1973 for sale and possession for sale of hallucinogens, is presented. This report states that 44 of these persons were convicted of lesser charges and that 40 of these were placed on probation; the cases against 5 were dismissed; 3 were tried and found not guilty; six were ordered to pay fines; and none were sentenced to the penitentiary or the reformatory solely on the charges upon which they were indicted.

However, this newspaper article does not establish petitioner's proposition. Moreover, even if this report does establish that few persons indicted in violation of § 3719.44(B) or (D) go to jail, which the Court specifically does not find, a constitutional infirmity still is not present.

For when Justice Stewart stated in *Furman, supra,* that "[t]hese death sentences are cruel and unusual in the same way that being struck by lightning is cruel and unusual",[6] he was comparing the sentences of convicted persons; here, petitioner's argument is predicated upon a comparison of the disposition of the cases of indicted persons. As any num-

---

cludes these findings are relevant to the instant inquiry.

6. 408 U.S. at 309, 92 S.Ct. at 2762.

ber of factors could validly account for the differences in treatment between indicted and convicted persons, the Court cannot find arbitrary imposition of sentence. Furthermore, the rationale expressed in the opinion of Justice White in *Furman*,[7] which is also relied on by petitioner to substantiate his claim of arbitrary imposition of imprisonment, is predicated upon the marginal deterrent effect of the death penalty. However, there is no doubt that imprisonment does have a real deterrent effect. The Court finds no Eighth Amendment violation under this test.[8]

Accordingly, the Court finds that the penalties provided for violation of Revised Code §§ 3719.44(B) and (D) are not in violation of the Eighth Amendment. See also Downey v. Perini, Case No. 73–1043, N.D.Ohio, decided June 7, 1974.

### GROUND SIX

The last asserted ground, that the search warrant was constitutionally infirm, also provides no basis for the requested relief. The affidavit about which petitioner complained in his initial brief, and which he attached thereto as an exhibit, is not the affidavit upon which the search warrant was issued. Although no evidence on this issue was presented at the evidentiary hearing, the questioned affidavit was submitted to the Court as part of the Return of Writ. Examination of the affidavit reveals that it is regular on its face, and does not substantiate petitioner's claim of illegal search and seizure.

As the Court finds no constitutional infirmities, the petition for habeas corpus must be, and the same hereby is, denied.

It is so ordered.

7. 408 U.S. at 311, 92 S.Ct. at 2763.

8. Neither would there be an Equal Protection violation established by these facts.

See Oyler v. Boyles, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962).