37 N.Y.2d 58 (1975)
The People of the State of New York, Respondent,
v.
Thomas La Ruffa, Also Known as Tommy Brooks, Appellant.
Court of Appeals of the State of New York.
Reargued March 19, 1975.
Decided June 11, 1975.
Robert B. Haynes and William E. Hellerstein for appellant.
Eugene Gold, District Attorney (Mark M. Baker of counsel), for respondent.
Chief Judge BREITEL and Judges GABRIELLI and COOKE concur with Judge JASEN; Judge JONES concurs in a separate opinion; Judges WACHTLER and FUCHSBERG dissent and vote to reverse in separate dissenting opinions.
*60 JASEN, J.
We have considered our prior decision in this case (see 34 N.Y.2d 242) in the light of Blackledge v Perry (417 US 21) and Tollett v Henderson (411 US 258) and adhere to the view that in the circumstances here presented the defendant, with the advice of competent counsel, by his plea of guilty to murder in the second degree, after the defense had rested and before summations had been made, waived his double jeopardy defense.
Blackledge was a challenge on double jeopardy and due process of law grounds to retrial under a North Carolina procedure allowing an appeal from an inferior court to take the form of a trial de novo in the superior court. Expressly predicated on the due process ground alone, the holding was that it was constitutionally impermissible for the State to respond to Perry's statutory right to appeal by bringing a more serious (felony) charge on the trial de novo; and that the plea of guilty in the superior court did not bar raising the constitutional claim which precluded the State from even prosecuting him on the more serious charge. The court was emphatic that the preclusion was justified by "vindictiveness" or the fear of vindictiveness in the subsequent prosecution (p 28).
Blackledge, as noted, is a due process and not a double jeopardy holding and we do not read the Supreme Court's due process reasoning as intended to overturn the established body of case law holding that the constitutional immunity from *61 double jeopardy is a personal right which if not timely interposed at trial may be waived (e.g., Kepner v United States, 195 US 100, 131; United States v Young, 503 F.2d 1072, 1074; United States v Conley, 503 F.2d 520, 521; United States v Scott, 464 F.2d 832, 833; United States v Buonomo, 441 F.2d 922, 924, cert den 404 US 845; Grogan v United States, 394 F.2d 287, 289, cert den 393 US 830) and which likewise may be forfeited by a plea of guilty (Cox v State of Kansas, 456 F.2d 1279, 1280; Kistner v United States, 332 F.2d 978, 980; United States v Hoyland, 264 F.2d 346, 351, cert den 361 US 845; Berg v United States, 176 F.2d 122, 125, cert den 338 US 876; Caballero v Hudspeth, 114 F.2d 545, 547). Such has long been the law in this State as well. (Former Code Crim Pro, §§ 332, 339; CPL 210.20; see People v Cignarale, 110 N.Y. 23, 29; People ex rel. Williams v Follette, 30 AD2d 693, affd 24 N.Y.2d 949; People v Lynch, 40 AD2d 856; People v Allen, 18 AD2d 840.)
The reliance placed by defendant on Robinson v Neil (409 US 505), we think is misplaced. The "practical result" language there used that the double jeopardy guarantee prevents a trial from taking place at all is not determinative because in Robinson the court was considering only the retroactivity of Waller v Florida (397 US 387) and not the effect of a guilty plea on a double jeopardy defense. The Supreme Court made that clear in its discussion of the Robinson case in the Blackledge opinion (p 31).
Double jeopardy, then, is, and historically has been, treated as a defense which is waivable if not timely asserted. Blackledge, a due process holding, does not change this. While the practical effect of a double jeopardy defense may be to prevent a trial from taking place, it must first be affirmatively raised. We believe that the instant case is controlled by the line of cases culminating in Tollett v Henderson (411 US 258, especially at pp 266-267) and conclude that the defendant having entered a knowing and intelligent plea of guilty with advice of counsel and in accordance with the then existing constitutional law of double jeopardy, waived his right not to be twice subjected to the risk of punishment for the same offense. (See Blackledge v Perry, supra, p 30.)
Most important in this analysis and that of the Supreme Court in the Blackledge case is that before a guilty plea will not work a waiver, there must be or have been a vindictive or retaliatory escalation of crime charged or sentence for a *62 defendant who pursued his constitutional rights, a circumstance totally absent here. A similar preclusion of waiver may arise if the plea proceedings are directly affected by the antecedent unconstitutionality (see Tollett v Henderson, supra, p 267).
Accordingly, we adhere to our original decision of affirmance dated May 9, 1974.
JONES, J. (concurring).
This case is now before us on remand by the Supreme Court of the United States for our further consideration in the light of Blackledge v Perry (417 US 21) (decided subsequent to our decision in this case on May 9, 1974) and Tollett v Henderson (411 US 258) (decided prior to our earlier decision in this case).
The question whether a claim of double jeopardy survives a plea of guilty was not, of course, reached by the Supreme Court in Blackledge. On the basis of my reading of the majority opinion in Blackledge, I would have been disposed to conclude that had the Supreme Court reached the issue it would have held that double jeopardy was an issue which "went to the very power of the State to bring the defendant into court to answer the charge brought against him" (Blackledge, supra, p 30) and as such would not have been foreclosed by a defendant's plea of guilty.
In the present case, however, the double jeopardy issue is squarely presented. Since the Supreme Court when so confronted in this case did not reverse our decision, I can only infer that it was not then the conclusion of the Supreme Court that defendant's double jeopardy claim here survived his plea. On this analysis, absent any mandate of the Supreme Court to the contrary, I see no occasion to depart from the earlier decision of our court in which I then concurred.
WACHTLER, J. (dissenting).
When this case was before us last spring, I joined in the unanimous opinion affirming the conviction (People v La Ruffa, 34 N.Y.2d 242). Several days later the Supreme Court decided Blackledge v Perry (417 US 21), and later still reversed and remanded La Ruffa's conviction for reconsideration in light of that decision and Tollett v Henderson (411 US 258). I have studied those opinions and have concluded that Blackledge announces a new doctrine, calling for reversal and dismissal of this indictment. Accordingly I cannot join the majority in reaffirming the conviction.
It is true, as the majority notes, that Part I of the Blackledge *63 decision concerns a due process rather than a double jeopardy violation. But it is not that portion of the decision which concerns me here. In Part II of the opinion the Supreme Court turned its attention to the question as to whether the defendant waived the constitutional issue by pleading guilty. The court concluded that he did not, and it is this part of the opinion which bears directly on the case now before us.
In Part II the court drew a distinction between "antecedent constitutional violations", i.e., "deprivations of constitutional rights that occurred prior to the entry of the guilty plea" and constitutional violations which go "to the very power of the State to bring the defendant into court to answer the charge brought against him." (Ibid., p 30; emphasis added.) They held that antecedent violations such as a coerced confession or tainted indictment could be waived by a plea of guilty. But violations affecting the court's power to proceed could not. The example used to illustrate this latter type of violation was the double jeopardy clause which the court noted was "distinctive" because "its practical result is to prevent a trial from taking place at all, rather than to prescribe procedural rules that govern the conduct of a trial." (Ibid., p 31.)
In view of this distinction I can no longer conclude, as I did originally, that by pleading guilty La Ruffa waived his rights under the double jeopardy clause. Although the Supreme Court did not decide this precise issue in Blackledge, I believe it is fairly evident that they have taken the position that a claim of double jeopardy does not involve an antecedent violation and is not waived by a guilty plea. To put it another way, since the double jeopardy clause gives the defendant "the right not to be haled into court at all upon the * * * charge" (ibid., p 30) it persists and survives a plea of guilty.
The order of the Appellate Division should be reversed and the indictment dismissed.
FUCHSBERG, J. (dissenting).
This case, here now on remand from the Supreme Court of the United States, presents one question: Defendant Thomas La Ruffa's trial for a capital crime having resulted in an implied acquittal by reason of his conviction of a lesser offense later set aside for trial error, was the availability of the defense of double jeopardy to prevent his retrial for the same capital crime waived by his plea of guilty to a lesser crime, though made at a time when the *64 established constitutional law had not yet enunciated that such a defense was available to him?
The Supreme Court's brief order (419 US 959) advises us that its remand is "for further consideration in light of BLACKLEDGE v PERRY, 417 US 21 (1974), and TOLLETT v HENDERSON, 411 US 258 (1973)". Our study of those cases leads us to the conclusion that the answer to the question posed should be in the negative.
The relevant legal story of this case starts in 1952, when defendant was indicted for murder in the first degree, which then carried the death penalty. However, at trial, a jury convicted him only of murder in the second degree. It is conceded that this constituted an acquittal of the first degree charge. For the second degree conviction he received an indeterminate sentence of 35 years to life. After that conviction was reversed (2 AD2d 765), at retrial he was again made to face the first degree murder indictment, despite his earlier acquittal of that crime. The jeopardy of capital punishment loomed once more. When the People had rested their case the defendant at this second trial offered a plea to murder in the second degree, not a capital crime. The offer was accepted. His pro se postplea attempt to withdraw it, made at the allocution on the ground that he had pleaded while in a "bad state of mind", having been rejected, a sentence of 35 years to life was meted out again.
That was all long before the Supreme Court, in 1969, was to pronounce the double jeopardy clause of the Fifth Amendment applicable to the States through the Fourteenth Amendment. (Benton v Maryland, 395 US 784, 787; Price v Georgia, 398 US 323.) Thereafter, in 1970, following resentence which started his time to appeal running anew (see People v Montgomery, 24 N.Y.2d 130), his conviction was affirmed by the Appellate Division. It held that his plea constituted a waiver of any claim that he had been subjected to double jeopardy by his retrial for first degree murder (40 AD2d 1022). Appeal from our court's affirmance of that decision (34 N.Y.2d 242) has now brought the Supreme Court's remand (419 US 959).
Preliminarily, it is important to note that, the Benton and Price decisions being fully retroactive (Robinson v Neil, 409 US 505; Ashe v Swenson, 397 US 436, 437, n 1), it is not disputed that, unless the plea waived his rights, the defendant has a valid double jeopardy claim.
*65 Turning now to the Blackledge and Tollett cases, we consider them chronologically.
Tollett, which antedated Blackledge, was the progeny of a series of three cases which have come to be known as the Brady trilogy: Brady v United States (397 US 742), McMann v Richardson (397 US 759) and Parker v North Carolina (397 US 790). None of those cases involved double jeopardy.
In Tollett (p 260), where a defendant convicted on a plea of guilty to first degree murder, brought Federal habeas corpus in Tennessee, claiming that, because of the systematic exclusion of Negroes, "the indictment to which he pleaded was returned by an unconstitutionally selected grand jury", a "knowable" right was involved. True it is that the Tollett court, in ruling against the defendant there spoke of the waiver of even "present and unknowable" rights. But, since the unconstitutional way in which its jury was selected and the right to be indicted by a constitutionally selected jury were then existing facts,[1] that statement would appear to be dictum.
Additionally, if the Tollett defendant had successfully challenged the indictment before his plea-produced waiver, he might have been reindicted by a properly drawn Grand Jury. (Blackledge, supra, p 30.) Likewise, the Brady trilogy involved constitutional rights which, if known and urged by the defendants in those cases, would not necessarily have been dispositive of them. In McMann, a coerced confession needed but to be suppressed; in Brady and Parker, impermissible burdens placed on the right to jury trial could have been overcome.
In contrast, Blackledge, if not a departure from the Brady-Tollett line of cases, was at least distinguished from them by a near-unanimous Supreme Court.[2] The differences tell us why. Blackledge involves double jeopardy; Tollett does not. Blackledge involves a constitutional claim that is conclusive and incurable; Tollett does not. Blackledge involves a then unknowable, nonexistent right (as yet unannounced at the time of the plea, as in La Ruffa's case); Tollett does not. In fact, Blackledge (p 30) involves "the very power of the State to bring the defendant into court"; Tollett does not.
*66 In Blackledge, after the defendant Perry received a six-month sentence following conviction of assault with a deadly weapon, a misdemeanor, in a nonjury trial before the State District Court of North Carolina, he filed a notice of appeal to that State's Superior Court. In North Carolina such an appeal gives a defendant an automatic right to trial de novo in the higher court. Faced with that prospect, the prosecuting attorney who had obtained the misdemeanor conviction, then procured an indictment charging Perry with assault with a deadly weapon with intent to kill. The addition of the italicized words transformed the self-same acts for which the defendant had already stood trial in the District Court from a misdemeanor into a felony on which enlarged punishment could be premised. As a result, to avoid the full measure of that possibility, Perry entered a plea of guilty, receiving a sentence the net effect of which was to increase his potential incarceration by 17 months. His quest for relief, after a tortuous trekking through the lower Federal courts, ended with his application for a writ of habeas corpus being granted on double jeopardy grounds. Perry having also claimed deprivation of due process of law, the Supreme Court, in affirming, did so on that ground, and did not reach the double jeopardy issue, because, as it stated at page 25 of its decision, it was unnecessary to do so.
Perhaps most instructive is what the court, writing through Mr. Justice STEWART, spelled out about the legal character of double jeopardy and the distinctions between Tollett and Blackledge:
"While petitioners' reliance upon the Tollett opinion is understandable, there is a fundamental distinction between this case and that one. Although the underlying claims presented in Tollett and the Brady trilogy were of constitutional dimensions, none went to the very power of the State to bring the defendant into court to answer the charge brought against him. The defendants in McMann v Richardson, for example, could surely have been brought to trial without the use of the allegedly coerced confessions and even a tainted indictment of the sort alleged in Tollett could have been `cured' through a new indictment by a properly selected grand jury. In the case at hand, by contrast, the nature of the underlying constitutional infirmity is markedly different. Having chosen originally to proceed on the misdemeanor charge in the District Court, the State of North Carolina was, under the facts of this *67 case, simply precluded by the Due Process Clause from calling upon the respondent to answer to the more serious charge in the Superior Court. Unlike the defendant in Tollett, Perry is not complaining of `antecedent constitutional violations' or of a `deprivation of constitutional rights that occurred prior to the entry of the guilty plea.' 411 US, at 266, 267. Rather, the right that he asserts and that we today accept is the right not to be haled into court at all upon the felony charge. The very initiation of the proceedings against him in the Superior Court thus operated to deny him due process of law.
"Last Term in Robinson v Neil, 409 US 505, in explaining why the Double Jeopardy Clause is distinctive, the Court noted that `its practical result is to prevent a trial from taking place at all, rather than to prescribe procedural rules that govern the conduct of a trial.' Id., at 509. While our judgment today is not based upon the Double Jeopardy Clause, we think that the quoted language aptly describes the due process right upon which our judgment is based. The `practical result' dictated by the Due Process Clause in this case is that North Carolina simply could not permissibly require Perry to answer to the felony charge. That being so, it follows that his guilty plea did not foreclose him from attacking his conviction in the Superior Court proceedings through a federal writ of habeas corpus." (Emphasis added.) (Blackledge v Perry, 417 US 21, 30-31, supra; cf. Leary v United States, 395 US 6.)
It appears to me that Robinson v Neil (409 US 505, supra), though basically a case on retroactivity, has special meaning that even transcends the court's re-embracement of the above-quoted language. Equally significant is what it does not say. For, though it too involved a plea of guilty to a second prosecution, the court did not even discuss the possibility that a "present and unknowable" double jeopardy might have been waived by the guilty plea there. (See Note, The Guilty Plea as a Waiver of "Present But Unknowable" Constitutional Rights: The Aftermath of the Brady Trilogy, 74 Col L Rev 1435.) Indeed, on remand, the District Court summarily rejected that contention (Robinson v Neil, 366 F Supp 924, 926).
The strength of the Blackledge court's language, portraying how, on the facts in that case, a double jeopardy violation also forms the heart of a classical picture of due process deprivation through unconstitutional chilling of the right of appeal by a threat of increased sentence (North Carolina v Pearce, 395 US 711), strongly suggests that limited significance is not to be *68 ascribed to the court's coming to rest on one theory rather than the other. It is hard to believe that its reach is too short to meet the double jeopardy produced by the wrongful threat of the death penalty for La Ruffa. (Price v Georgia, 398 US 323, 331.) We are confirmed in this view by Mr. Justice REHNQUIST, who, in his dissent to Blackledge does not so slight its connotations for double jeopardy. He points out that (p 35) "the Court's remedy is the same that would follow upon a conclusion that the bringing of the new charges violated * * * the Double Jeopardy Clause" and observes that the court's conclusion "sounds in the language of double jeopardy, however it may be dressed in due process garb."
It seems clear, therefore, that whether sheathed in the broad cloak of due process or the tighter, more specific doctrine of double jeopardy, for La Ruffa, as for Perry, his double jeopardy-based rights survived his guilty plea.
In arriving at this opinion, we have not ignored the "established body of case law" recited by our learned brethren in the majority. However, on analysis, it appears to us that most of the cases so cited, on the one hand, either antedate Blackledge and, even more fundamentally, the revolutionary change in the application of double jeopardy since Benton v Maryland (395 US 784, supra) overruled earlier notions set forth in Palko v Connecticut (302 US 319, 325) or, on the other hand, are ones which, while they stand for the accepted rule that double jeopardy is an affirmative defense waived unless asserted, do not treat with cases where it was impossible to affirmatively plead such a defense because it just did not then exist.
It would follow, then, that, by whichever of these constitutional routes his rights are vindicated, the implications flowing from Blackledge and the remand to us here require that La Ruffa be entitled to the benefit of the Fifth Amendment's injunction against his person being "subject for the same offense to be twice put in jeopardy of life". This view, we believe, we are here constrained to hold and, though we would be free to adopt more stringent standards as a matter of State law (Oregon v Hass, 420 US 714; Lefkowitz v Newsome, 420 US 283, we may not employ lesser ones than those that have been here mandated by the Supreme Court.
Accordingly, we vote to reverse and remand for a new trial on a charge no greater than murder in the second degree.
On reargument: Original decision of affirmance dated May 9, 1974 adhered to.
NOTES
[1] (Kennedy v State, 186 Tenn 310; Williamson v State, 194 Tenn 341; Beckett v United States, 84 F.2d 731.)
[2] Mr. Justice REHNQUIST who wrote the majority opinion in Tollett, was joined in part of his dissent in Blackledge only by Mr. Justice POWELL.