(No. 33556.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ALFONSE BARTKUS, Plaintiff in Error.

*Opinion filed November 23, 1955*

ALFONSE BARTKUS, *pro se.*

LATHAM CASTLE, Attorney General, of Springfield, and JOHN GUTKNECHT, State's Attorney, of Chicago, (FRED G. LEACH, IRWIN D. BLOCH, JOHN T. GALLAGHER, RUDOLPH L. JANEGA, WILLIAM L. CARLIN, and FRANCIS X. RILEY, of counsel,) for the People.

Mr. CHIEF JUSTICE HERSHEY delivered the opinion of the court:

The plaintiff in error, Alfonse Bartkus, herein called defendant, was convicted in the criminal court of Cook County of armed robbery and sentenced to from 25 years to life imprisonment. He was also convicted on an habitual count, which charged a prior armed robbery conviction, and sentenced to life imprisonment.

The defendant was indicted, along with Joseph Cosentino and James Brindis, for robbery, while armed, of an officer of a savings and loan association in Cicero. Cosen-

tino and Brindis pleaded guilty and testified for the prosecution. Prior to the instant trial, the defendant had been tried in a Federal court for violation of the Federal bank robbery statute, but was acquitted.

In support of this writ of error, the defendant contends that the trial court erred in the following particulars: (1) failing to sustain his plea of double jeopardy, to allow discharge on grounds of *res judicata,* and to permit evidence of the prior Federal acquittal; (2) admitting evidence of three previous convictions; (3) permitting a verdict to stand when the proof shows the defendant was not proved guilty beyond a reasonable doubt; (4) erroneously instructing the jury; and (5) sentencing under both the armed robbery count and the habitual criminal count.

First, the defendant argues that his prior Federal court acquittal of the charge of robbing a Federal bank (insured) bars his prosecution for armed robbery of the same institution, and in any event, it was error not to permit the introduction in the instant case of the fact of the prior acquittal.

There is a conclusive answer to this contention in the decided cases, beginning with the early case of *Moore* v. *Illinois,* 14 How. 13, 55 U.S. 13. In explaining that by a single act one may commit an offense against both the Federal government and a State government, for which separate punishments may be inflicted, the court said: "Every citizen of the United States is also a citizen of a State or territory. He may be said to owe allegiance to two sovereigns, and may be liable to punishment for an infraction of the laws of either. The same act may be an offence or transgression of the laws of both  *  *  * it cannot be truly averred that the offender has been twice punished for the same offence; but only that by one act he has committed two offences, for each of which he is justly punishable." To like effect are *Sexton* v. *California,* 189 U.S. 319; *United States* v. *Lanza,* 260 U.S. 377, and *Herbert* v. *Louisiana,* 272 U.S. 312. We reaffirmed this principle in

the recent case of *People* v. *Hammond*, 1 Ill. 2d 65. See also *State* v. *Moore*, 143 Iowa, 240, 14 I.L.P., Criminal Law, sec. 97, and 15 Am. Jur., Criminal Law, sec. 394.

Moreover, the court did not err in precluding evidence of the prior Federal acquittal. It follows, from the foregoing reasoning, that such evidence was irrelevant, since proof of Federal acquittal could not bar State conviction. And the issue here of former jeopardy was a question of law for the court, no question of fact for the jury being involved. Cf. *People* v. *Simos*, 345 Ill. 226, 230.

Second, the defendant argues that it was error to admit evidence of three previous convictions. However, the proof of the prior convictions, established by stipulation, was admissible to attack the credibility of the defendant as a witness. *People* v. *Del Prete*, 395 Ill. 110, 116.

Defendant's third contention raises a question as to the sufficiency of the evidence and necessitates a consideration of the proof adduced at the trial.

Joseph Cosentino and James Brindis, each of whom confessed and pleaded guilty to the crime charged, testified to the following: On July 27, 1953, at about 4 P.M., they went with the defendant in a car driven by him to a point near the General Savings & Loan Association in Cicero, for the purpose of robbing that institution. The defendant remained in the car, stating that the police had his picture on file. His companions went in, each carrying a gun wrapped in a newspaper. Pulling their guns on Harold Pinkert, president of the loan company, they were able to make off with $3750. After they left the building, they ran through an alley, got into the car with the defendant, and drove to Chicago where the money was divided equally among the three.

Harold Pinkert, the loan company president, testified that he was able to get the license number of the get-away car, Illinois No. 1-101-556. In addition, he said that the third party in the car was about 5 feet 6 inches tall, weighed

about 145 pounds, was about 30 years old, and, judging from the profile he saw, was a "thin, fair faced" man.

It was stipulated that the defendant was the owner of a 1953, light gray, two-door Ford, bearing the license number seen by Pinkert, and that the defendant was driving this car during the month of July, 1953, and particularly on July 26 and 27. Exhibits showing automobile license records further identified the defendant as the owner in April, 1953.

The State also called Grant Pursell, who had been in the Chicago Federal lockup when the defendant was there and who testified as follows: "I asked him [the defendant] why he was there and he said for bank robbery. * * * He said he drove the car * * * he stayed in the car * * * he just got away * * * a loan association or something like that, it was a bank, yes, that's what he did say. He said it was located in Cicero * * * there was some conversation concerning money, but I couldn't say how much. * * * He said they got away with the money. From the bank. * * * He said that there was a fourth man who was arrested but that he did not have anything to do with the robbery."

A stipulation that the defendant had been convicted of armed robbery in 1948, as alleged in the indictment, concluded the State's case.

The defendant sought to establish an alibi, based upon his own testimony, and that of his wife Joanne, her sister Dolly Del Genio, Leonard Del Genio (Dolly's brother-in-law), a Montgomery Ward Co. nurse named Eunice Jones, and two barbers, Louis and Joseph Calomino.

This evidence was to the effect that the defendant and his wife were at a Montgomery Ward establishment from about 1:00 to 2:30 P.M., on July 27, where his wife, who was applying for a job, took a medical examination. Then they were at home at a Bosworth Street address until after 3:00 P.M., at which time the defendant took Dolly Del

Genio, his wife's sister, to work. The testimony is that then Leonard Del Genio and the defendant started to the Calomino barbershop to get a haircut, arriving there just before 4:00 P.M. and staying until about 4:45 P.M. The nurse put Mrs. Bartkus (the defendant's wife) at Montgomery Ward's between 12:30 and 2:08 P.M. The two barbers put Del Genio and the defendant in the barbershop from 3:45 or 3:50 P.M. to 4:45 P.M.

The defendant himself relates this course and adds that he saw James Brindis at 3:30 P.M. and let him have the car on the latter's promise he would be back in an hour or so. The defendant admits that this was "prearranged." He says he then went to get the haircut. He denies the admissions testified to by Pursell, and he denies that he participated in, drove the car for, or gave Brindis permission to use the car in any holdup. And he says he left Chicago that night and went to Wauconda, or Island Lake, which is a resort he and his wife frequently visited.

In rebuttal, an FBI agent testified to certain statements made by some defense witnesses which were at slight variaance with their testimony at the trial; and Lt. Frank Pape, head of the Chicago detective bureau robbery detail, testified that the defendant's reputation for truth and veracity was bad. Finally, over objection as to materiality (on the ground that there was already in evidence one previous conviction and that proof of additional convictions would, without warrant, inflame the jury), and preserving this objection, it was stipulated that the defendant had three previous convictions, one for armed robbery in 1945, one for grand larceny in 1948 and one for armed robbery in 1948. The latter was the one charged in the additional count.

From a consideration of the evidence in this record, we are convinced that there was sufficient proof upon which the jury could return a finding of guilty. In the first place, there is the accomplice testimony, which implicates the

defendant. And there is substantial evidence in addition: the inferential identification by Pinkert, the fact that it was the defendant's car that was used, the admission made to Pursell, and the flight from the city on the night in question. The defendant's explanations, his categorical denial of participation, and the alibi corroboration of his near relative Leonard Del Genio and of the barbers, presented, at best, questions for the jury. On these facts, the jury was entitled to disbelieve him and to believe the accomplices as corroborated; and we cannot, therefore, say its finding of guilt was not supported by proof beyond a reasonable doubt.

Fourth, the defendant raises two points on instructions, claiming the court erred in giving an instruction regarding the presumption of innocence and in refusing similar instructions offered by him. But the language complained of in the given instruction, that the presumption "is not intended to aid anyone who is in fact guilty of the crime to escape," appears in the form of instruction suggested by the defendant. And the language in the refused instruction, that the presumption continues throughout the trial, was in the given instruction.

As to the final contention, that the defendant was sentenced to imprisonment for 25 years to life on the first count and to the mandatory life sentence under the habitual count, we cannot say this was reversible error. Under the statute, a life sentence was mandatory. Since this was "all-inclusive" and "a greater punishment" than that under count one, the sentence under the first armed robbery count may be viewed as surplusage and void and be "entirely disregarded." (*People* v. *Hamlett,* 408 Ill. 171, 178.) Remandment under such circumstances is unnecessary.

Finally, we have examined the record throughout for consideration of the case as a whole, as well as under all allegations of error, to determine whether there has been, as the defendant charges, a "totality of the facts in the

setting of this case" as would be "shocking to the universal sense of fairness and right," and therefore a violation of the fourteenth amendment of the Federal constitution. The record does not support this claim or the others made, and we find no reversible error therein.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*