**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**James Alva HOYLAND, Defendant-**
**Appellant.**

**No. 12320.**

United States Court of Appeals
Seventh Circuit.

Feb. 20, 1959.

Petition for Rehearing En Banc Denied
March 30, 1959.

Lawrence A. Coles, Jr., Chicago, Ill., James Alva Hoyland, Alcatraz, Cal., for appellant.

Robert Tieken, U. S. Atty., Charles R. Purcell, Jr., Asst. U. S. Atty., Chicago,

Ill., for appellee. John Peter Lulinski, Albert F. Manion, Asst. U. S. Attys., Chicago, Ill., of counsel.

Before DUFFY, Chief Judge, and MAJOR and PARKINSON, Circuit Judges.

MAJOR, Circuit Judge.

This case is here on appeal from an order of the district court entered March 13, 1958, denying, after hearing, defendant's motion, filed pursuant to Title 28 U.S.C.A. § 2255, to vacate a judgment entered July 5, 1951, on defendant's plea of guilty, by which defendant was and presently is incarcerated in the penitentiary. The motion to vacate was heard by District Judge Philip L. Sullivan, the same judge who previously had entered the judgment of conviction.

The indictment to which defendant entered a plea of guilty, so far as here pertinent, charged defendant and other named persons[1] with violating Title 18 U.S.C.A. § 2113 (sometimes called the Federal Bank Robbery Act), in that they did by force, violence and intimidation take from named persons certain described property which was in the care, custody, control, management and possession of the South Chicago Savings Bank, a member of the Federal Reserve System and a bank whose deposits were insured by the Federal Deposit Insurance Corporation.

Defendant in this court advances three contentions: (1) that the finding of the district court that defendant's plea of guilty was not coerced is clearly erroneous; (2) that the prosecution and conviction of defendant in a Federal court, after his prosecution and entry of a plea of guilty in a State court to the same or similar offense, violates either the "Double Jeopardy" or the "Due Process" clause of the Fifth Amendment to the Federal Constitution; (3) that the court erred in denying defendant's request to adduce evidence which it is claimed would show an absence of jurisdictional facts alleged in the indictment.

In the beginning, we think it appropriate to note that defendant is represented by Mr. Lawrence A. Coles, Jr., court-appointed counsel, who has made an excellent presentation both in written brief and on two oral arguments.[2] This court is appreciative of his valuable services.

 On motion to vacate, defendant testified in great detail in support of the contention that his plea of guilty resulting in the judgment under attack was coerced or induced by promises of leniency. The court was quite liberal in its rulings and defendant's testimony encompassed a wide range. The crime charged in the indictment was alleged to have been committed on June 25, 1949. On July 28 of the same year, defendant was arrested by State officials and shortly thereafter confessed his participation in the bank robbery. On January 11, 1950, defendant entered a plea of guilty in the State Court of Cook County, Illinois. No judgment was entered upon that plea either then or subsequently. Defendant testified in the State court as a government witness against two of his co-defendants, who were acquitted. On July 11, 1950, defendant testified before the Federal Grand Jury, which returned an indictment charging defendant, Joseph Jakalski and Richard Tamborski with the crime of bank robbery. On November 21, 1950, defendant was arraigned in the district court and entered a plea of guilty. On July 5, 1951, the judgment now sought to be vacated was entered. In the meantime, defendant, on January 25, 1951, testified as a government witness against Jakalski and, on June 8, 1951, likewise testified against Tam-

---

1. Joseph Jakalski, a co-defendant, who was tried and convicted, also attacked the validity of the judgment against him in a proceeding under Sec. 2255. The district court denied his motion and this court on appeal affirmed such denial. United States v. Jakalski, 237 F.2d 503.

2. Oral argument was originally heard by a panel which included the late Judge Philip J. Finnegan. No decision having been reached prior to his death, the court ordered the case heard by another panel; hence, the second oral argument.

borski, both of whom were convicted in the district court. These cases were also heard by Judge Sullivan.

Defendant was in the custody and control of State officials from the time of his arrest until entry of the judgment now under attack, except for brief periods when he appeared in the Federal court in connection with the matters set forth. Defendant testified in great detail relative to cruel and inhuman treatment which he received at the hands of Illinois officials, covering a period of two or three days, which he claims resulted in his confession. This testimony, while admitted over objection by the government, was not denied. In this connection it is pertinent to note that defendant was interviewed by agents for the Federal Bureau of Investigation prior to the time of his interrogation by State officials but it is not claimed that they or any other Federal officials took any part in the activities which resulted in the alleged coerced confession.

The district court in the instant proceeding made detailed findings of fact which completely refute the contention that defendant's plea of guilty was the result of coercion or any improper promises or conduct on the part of governmental officials. We are convinced from a careful examination of the record that such findings are amply supported. Reference to the more salient portions thereof will suffice for our present purpose. Relative to defendant's testimony before the Grand Jury, the court found that he was advised by an Assistant United States Attorney that he was under no compulsion to testify; that he must make his own decision as to whether or not he would, and that if he testified anything he said would be a matter of record against him; that it was not the intention of the United States Attorney to ask for the maximum penalty for witnesses who testified truthfully for the government but that the United States Attorney could make no additional or further commitments, and specifically could not or would not attempt to bind the court as to the type or nature of the sentence to be imposed, and that defendant, having received such advice, stated that he understood and was then and there willing to testify and tell the truth regarding the violation subsequently charged in the indictment, to which he entered a plea of guilty.

The court found that defendant, after entering his plea of guilty, appeared as a witness on January 25, 1951, on behalf of the United States against his co-defendant Jakalski (this was more than eighteen months after the alleged coercive confession obtained by State officials), and testified that he was guilty of the offense charged in the indictment and that no threat or promise had been made to induce his testimony; that the only consideration offered for his testimony was the representation that the United States Attorney would not seek the imposition of a death penalty as to him if he appeared and testified truthfully. Further, the court found that defendant appeared as a witness on behalf of the United States on June 8, 1951, against another co-defendant, Tamborski (this was almost two years after his alleged coercive confession to State officials), and testified that he was guilty of the offense charged in the indictment; that he had previously pleaded guilty to such indictment with the advice of counsel, fully understanding the consequences of such plea, and that the United States Attorney had represented to him only that it was the policy of the Department of Justice not to ask for a death penalty if he testified truthfully and that he was under no compulsion to testify. In addition to these findings, the record discloses that defendant testified on the occasion of these trials against his co-defendants that his confession made to State officials was not obtained by coercion, compulsion or duress; that he was aware of the penalty for the offense with which he was charged, and that he knew that the prosecutor could not guarantee the penalty which the court might impose upon a plea of guilty.

In the posture of the case as presented, we need not be concerned whether there

is a constitutional basis for the rejection in a Federal court of a coercive confession obtained by State court officials. That question could arise only if defendant had stood trial and the government had sought the introduction of such confession against him. At any rate, we know of no authority in support of the contention that the question can be raised in a proceeding to vacate a judgment predicated upon a voluntary plea of guilty. To hold otherwise would make it risky for a court to enter a judgment upon a plea of guilty, even though the defendant was fully advised of his constitutional rights and represented at the time by competent counsel. Every judgment would be subject to collateral attack, based upon the state of mind of the defendant, unknown either to the court or to defendant's own counsel.

Assuming, however, contrary to what we think, that the alleged coercive confession obtained by State officials was a material factor in the instant proceeding, there is no basis for a finding that it was improperly obtained. True, defendant so testified, but the court could hardly have done otherwise than reject such testimony in view of the fact that the same judge, as above noted, had heard defendant testify against his co-defendants directly to the contrary on two separate occasions.

This brings us to the circumstances which more directly relate to the judgment sought to be vacated. At the time of defendant's arraignment, on November 21, 1950, when he entered a plea of guilty, as well as on July 5, 1951, when the court pronounced sentence, defendant was represented by Allan R. Bloch, an able and experienced lawyer. On the former occasion, the court fully advised defendant of his rights and informed him of the possible penalties. A part of the record in this respect is as follows:

"The Court: I probably should have warned him, and I will do that now. You understand that you are not obliged to plead guilty?

"Defendant Hoyland: That is correct.

"The Court: You know that?

"Defendant Hoyland: Yes.

"The Court: You have talked this over with your attorney, is that correct?

"Defendant Hoyland: That is right.

"The Court: And he advised you?

"Defendant Hoyland: Yes.

"The Court: You understand I may sentence you in the custody of the attorney general; that means to the penitentiary, for life?

"Defendant Hoyland: That is right.

"Mr. Ryan: Or any term.

"The Court: Yes. Notwithstanding that, you still persist in your plea of guilty?

"Defendant Hoyland: Yes, sir."

On the occasion of defendant's appearance before Judge Sullivan for sentencing, his counsel made an urgent plea for leniency in which he stated that he had been counsel for defendant in the State court and that defendant had testified for the government both in the Federal and State courts. He emphasized that defendant's cooperation with the government was the result of "an honest, conscious realization of guilt and a desire to atone for it; and I think he was shocked by this crime himself as well as the community. * * * I think that in his case there has been no maneuvering or effort to obtain any benefit for him. I think he has acted here out of a sincere desire to try to make up to some small extent for what happened here."

Defendant concedes, as of course he must in view of the record, that he was thoroughly informed and understood the consequences of entering a plea of guilty, but he argues even so that his plea was not voluntarily entered because it was the result of coercion and improper inducement. He complains that he was forced to testify before the Grand Jury and that he regarded certain statements made to him by Assistant District Attorney Ryan

as threats or promises which induced him to testify against his co-defendants and later enter a plea of guilty. The findings of Judge Sullivan on this aspect of the case, previously noted, are amply supported and we think they need not be further discussed. There is no factual basis for the contention that defendant was in any manner deceived by government officials or that he was improperly induced to enter a plea of guilty.

Defendant was represented by counsel and accorded every safeguard which the law requires. The burden was his in the instant proceeding to prove that he had been deprived of a constitutional right in connection with his plea of guilty which resulted in the judgment sought to be vacated. United States v. Swaggerty, 7 Cir., 218 F.2d 875, 880. This burden he failed to meet. More than that, it is pertinent to observe that Judge Sullivan, who entertained defendant's plea of guilty and imposed sentence, who heard him testify against two of his co-defendants as well as in the instant hearing on the motion to vacate, was in a highly advantageous position not only to evaluate the credibility of defendant's testimony but to determine whether any of his constitutional rights had been violated. As was pertinently observed in Crowe v. United States, 4 Cir., 175 F.2d 799, 801:

"This is not the case of an accused who has been denied counsel and who has failed to assert his constitutional rights at the proper time because of ignorance, but of one who has had the assistance of able counsel who knew how to raise and would have raised upon the original trial the questions that he is now raising, if there had been any substance to them."

We agree with the court's finding that defendant's plea of guilty, upon which the judgment sought to be vacated is predicated, was not the result of coercion or improper inducement. Certainly such finding is not clearly erroneous; in fact, in our judgment, it is clearly correct.

Defendant's contention relative to double jeopardy may be disposed of in short order. We assume that defendant's plea of guilty in the State court placed him in jeopardy but, even so, it does not follow that such jeopardy was a bar to prosecution in the Federal court. We need not cite cases in support of the well established rule to the contrary because defendant in his brief concedes, "Defendant is aware of the authorities in support of the proposition that the Double Jeopardy clause does not preclude independent trials by different sovereignties." Even so, defendant argues:

"However, there is a case [Bartkus v. People of State of Illinois, 355 U.S. 281, 78 S.Ct. 336, 2 L.Ed.2d 270; Id., 356 U.S. 969, 78 S.Ct. 1004, 2 L.Ed.2d 1075] (via certiorari) presently before the United States Supreme Court in which the question is raised as to whether a defendant may lawfully be subsequently prosecuted and convicted in a state court for an offense (robbery) he was prosecuted for and acquitted of in the federal court. Bartkus v. Illinois [People v. Bartkus] 7 Ill.2d 138, 130 N.E.2d 187."

Defendant professes to believe, we think it can be nothing more than a hope, that the decision of the Supreme Court in the Bartkus case will furnish support for his double jeopardy contention. Based upon this hope, we are requested to hold this appeal in abeyance pending the decision in Bartkus. It is not discernible how the opinion of the Supreme Court in that case could throw any light upon the question here. In Bartkus, defendant appealed to the Illinois Supreme Court from a judgment of conviction after trial at which defendant had appropriately asserted a former acquittal by a Federal court. The plea of double jeopardy was denied by the trial court, which denial was affirmed by the Illinois Supreme Court. The issue before the United States Supreme Court is whether the decision of the Illinois Supreme Court was correct. In contrast, in the instant situation no plea of

double jeopardy was interposed in the Federal court and obviously could not have been made on defendant's plea of guilty. In fact, this double jeopardy issue is injected into the case for the first time on this appeal. In other words, it is sought to be raised on a collateral attack when it could not have been raised on an appeal from the judgment based on defendant's plea of guilty.

In any event, the rule as announced in many cases is that double jeopardy is a defense which must be pleaded and that it is waived by a plea of guilty. Brady v. United States, 8 Cir., 24 F.2d 399, 405; Caballero v. Hudspeth, 10 Cir., 114 F.2d 545, 547, and United States v. Caufield, 7 Cir., 207 F.2d 278, 280. As was appropriately stated in the Caballero case:

> "The right to not be placed in jeopardy twice for the same offense is a personal right. It is an immunity granted to the citizen by our constitution, and may be waived. The plea of guilty by the defendant constituted a waiver of this right. At no stage of the proceedings did he assert this constitutional guarantee. The defense may not now be raised for the first time by writ of habeas corpus. [Citing cases.]"

In our judgment, there is no merit to the double jeopardy contention.

▮ Lastly, we come to the contention that the court committed reversible error in its refusal, during the hearing on the motion to vacate, to issue a subpoena *duces tecum* ordering production of certain documents by the South Chicago Savings Bank and Brinks Express Company. The evident purpose of this subpoena was to procure documents in support of defendant's theory that there was an absence of facts essential to give the court jurisdiction under Title 18 U.S.C.A. § 2113. It is not claimed but that the indictment to which defendant entered a plea of guilty properly charged an offense under that section.

The record does not disclose what jurisdictional facts were claimed to be absent, but it is argued here that the documents sought, if produced, might have shown that the South Chicago Savings Bank was not a member of the Federal Reserve System or, if so, that it was not insured by the Federal Deposit Insurance Corporation, or that the money obtained in the robbery did not "belong to," or that it was not in the "care, custody, control, management or possession of the South Chicago Savings Bank."

Defendant's argument on this contention is based almost entirely upon a recent decision of this court. La Fever v. United States, 257 F.2d 271. We think it must be conceded that the case supports defendant's contention, at least to the extent that he was entitled to a hearing on the issue thus raised. After a careful review of the cases, as well as the logic of the situation, we reach the definite conclusion that the La Fever case was erroneously decided. The order before the court in that case should have been affirmed, not reversed. Such being our conclusion, it becomes our distasteful duty to overrule that decision, and this we do.

We refer particularly to two decisions of this court (both prior to La Fever) which support a contrary and we think correct rule. United States v. Caufield, 207 F.2d 278, and Klein v. United States, 204 F.2d 513.

In Caufield, the defendant entered a plea of guilty to an information charging that he had transported in interstate commerce a falsely made security. Subsequently, on a motion made pursuant to Sec. 2255, to vacate the judgment, it was contended that the security referred to in the information had not moved in interstate commerce and that the judgment entered on defendant's plea of guilty was a nullity. This court denied the contention and affirmed an order of the district court denying defendant's motion. In doing so we made the following pertinent statement (207 F.2d at page 280):

> "Obviously, had the defendant stood trial on a plea of not guilty,

he would have cast upon the government the burden of proving all issues, including the question of whether the check had moved in interstate commerce. However, with the advice of counsel he knowingly and voluntarily pleaded guilty, thus admitting the facts alleged in the information. [Citing cases.] Hence defendant, by his plea of guilty admitted that the falsely made check described in the information had moved in interstate commerce."

In Klein, defendant had been found guilty, after trial, of robbing a post office establishment in violation of Title 18 U.S.C.A. § 2114. Defendant in his motion to vacate under Sec. 2255 alleged, *inter alia*, that the establishment robbed was not a lawful postal substation and that the trial court had erred in denying defendant's motion for acquittal for that reason. This court held that the contentions thus advanced by defendant could only have been raised on an appeal from the judgment of conviction, that they could not be raised on motion under Sec. 2255.

In Keto v. United States, 8 Cir., 189 F.2d 247, defendant was charged by information with armed robbery of a bank under the same statute violated by the instant defendant. Prior to defendant's plea of guilty, the court's attention was called by the United States Attorney to the fact that the information failed to allege that the bank in question was a member of the Federal Deposit Insurance Corporation. Defendant's attorney, however, agreed that no amendment of the information was necessary because it was a fact that the bank was such member. Defendant pleaded guilty to this defective indictment and the court pronounced sentence. Subsequently, the defendant, in a proceeding under Sec. 2255, moved to vacate the judgment on the ground that the information to which defendant had entered a plea of guilty was defective because of the omis-

sion of an essential jurisdictional fact. The court of appeals affirmed the district court which had denied the motion to vacate, holding that the information was not subject to collateral attack. Other cases to the same effect are Smith v. United States, 10 Cir., 205 F.2d 768, 770; Barnes v. Hunter, 10 Cir., 188 F.2d 86, 89; United States v. Jonikas, 7 Cir., 197 F.2d 675, 676; Knewel v. Egan, 268 U.S. 442, 446, 45 S.Ct. 522, 69 L.Ed. 1036.

The view which we take is not only supported by the cases but by logic and common sense. An opposing view would leave every criminal judgment entered in the Federal courts open to collateral attack. This is so because all such judgments are based upon a charge containing allegations here characterized by defendant as jurisdictional facts. Absent such allegations, no Federal offense could be stated. Where a defendant pleads not guilty, he places upon the government the burden of proving all essential facts alleged, whether they be characterized as jurisdictional or otherwise. On the other hand, his voluntary plea of guilty admits all essential allegations, thus relieving the government of the burden of making proof. Defendant's contention, if tenable, would have required Judge Sullivan, upon defendant's plea of guilty, to have conducted an independent inquiry or hearing to determine so-called jurisdictional facts, that is, whether the South Chicago Savings Bank was a member of the Federal Reserve System and whether it was insured by the Federal Deposit Insurance Corporation. The admissions inherent in defendant's plea of guilty would not have obviated the necessity for such procedure.

Defendant's argument, based on his appraisal of jurisdictional allegations, confuses facts essential to be alleged as elements of the crime with jurisdictional requirements arising as a matter of law. A court which has jurisdiction of the subject matter and of the defendant, as did the court in the instant case, has the power, upon a defendant's plea of guilty,

to enter a judgment unassailable from collateral attack.

It follows from what we have held that the order denying defendant's motion to vacate should be affirmed. It is so ordered.