129 F.3d 120
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
John T. MARTIN, Defendant-Appellant.
 No. 97-1032.
 United States Court of Appeals, Seventh Circuit.
 Argued June 10, 1997.
Decided September 25, 1997.
 
 Appeal from the United States District Court for the Southern District of Indiana, New Albany Division.
 Before CUDAHY, COFFEY and EASTERBROOK, Circuit Judges.
 
 BARKER
 ORDER
 
 1
 John Thomas Martin pleaded guilty to bombing a private dwelling, 18 U.S.C. § 844(i), and obstruction of justice. 26 U.S.C. § 5841. Martin appeals his conviction and sentence, arguing that (1) the impact of the bombing on interstate commerce was too slight to satisfy the interstate commerce requirement of § 844(i); and (2) the court wrongly calculated his base offense level under the Sentencing Guidelines, because he "merely" tried to damage, rather than destroy, the dwelling, and did not knowingly create a risk of death or serious bodily harm to the occupant of the house he bombed. We affirm.
 
 I.
 
 2
 John Thomas Martin was divorced from his wife, Lynn Webster, and not happy about it. Before they separated, Martin told Webster that if she ever saw another man, he would kill the other man. Martin told his friends that he followed Webster around to see if she was seeing anyone. On September 14, 1995, Webster obtained a restraining order against Martin. Martin, however, continued to be obsessed with his ex-wife. He learned that Webster had been seen talking to a man who drove a black car. Thereupon, Martin tracked down the man's identity, and learned that he and Webster worked together. That man was James Bowyer. Though Martin denies doing so, his co-workers later told investigators that because he believed (falsely, as it turned out) that Bowyer was dating Webster, Martin offered to pay them to beat up Bowyer, talked of blowing Bowyer up, and also talked about setting off a bomb at Bowyer's house. In fact, Martin did more than talk: he brought a pipe bomb to work, and boasted that Webster was going to pay for cheating on him. The pipe bomb was just over five inches long and one-and-a-half inches in diameter.
 
 
 3
 On the night of October 5, 1995, Martin ran into his friend Martin Campton and informed Campton that he was going to bomb either Webster's or Bowyer's house. Martin and Campton went to Bowyer's house about 10:30 p.m. The house was dark, but Bowyer's car was in the driveway. According to Campton, Martin planted the pipe bomb at the back door of the house, and lit the fuse. Martin maintained that he set the bomb ten feet from the back door, after which Campton detonated it. Bowyer was not injured in the ensuing explosion, but the bomb caused $4000 in damage to the back door, the porch and a refrigerator on the porch, and another $3500 in damage to a building behind Bowyer's house. Needless to say, it also roused Bowyer and his neighbors.
 
 
 4
 After fleeing the scene of the explosion, Martin called a friend from work, William Rabe, whom he met to construct an alibi. Martin gave Rabe the materials left over from constructing the pipe bomb, which Rabe subsequently destroyed. Martin also destroyed the shoes he had worn during the bombing and asked several other co-workers to lie about the incident to investigators.
 
 
 5
 The attempts to thwart the investigation were in vain. Campton cooperated with the government, which with Campton's consent recorded a conversation between Martin and Campton about the bombing. In that conversation, Martin indicated that he made and detonated the bomb and believed he could face attempted murder charges as a result. Martin was arrested and indicted. He eventually pleaded guilty to one count of destruction of property by explosive, 18 U.S.C. 844(i),[1] and one count of obstruction of justice. 26 U.S.C. § 5841. Martin stipulated that the bomb was set off to frighten Bowyer. The plea agreement also stipulated that the utilities connected to Bowyer's residence "affected commerce or moved in interstate commerce." Martin disputed several of the factual findings in the Presentence Investigation Report, including the Probation Office's recommendation that his base offense level be calculated at 24, for knowingly attempting to harm Bowyer and destroy his house. The district court concluded that Martin planted the bomb himself, knowingly created a substantial risk of death or serious bodily injury to Bowyer when he did so, and intended to destroy the dwelling. For that reason, the court determined that Martin's base offense level was 24, U.S.S.G. § 2K1.4(a)(1), and sentenced him to 108 months in prison, $7,396.50 in restitution, and a term of supervised release. Martin appeals.
 
 II.
 
 6
 The federal bombing statute requires that the damaged property be used in or affect interstate commerce. 18 U.S.C. § 844(i). Martin's principal contention is that the residence which he bombed had too small an impact on interstate commerce to satisfy that requirement. Martin argues that under the Supreme Court's decision in United States v. Lopez, 115 S.Ct. 1624 (1995), Congress may only regulate activities which have a substantial effect on interstate commerce. Id. at 1629-30. Martin argues that the only proven nexus of Bowyer's residence with interstate commerce is non-business, private telephone service, provided by a company with corporate offices in Florida. This telephone service was not interrupted by the bombing, and, Martin notes, the record is devoid of evidence that Bowyer even used his phone. Therefore, Martin concludes, the bombing had no substantial effect on interstate commerce. Because the requisite nexus with interstate commerce was lacking, according to Martin, the district court lacked jurisdiction over his crime.
 
 
 7
 Martin's argument rests on the concept that a guilty plea does not waive jurisdictional defenses to the crime at issue. United Stales v. Nash, 29 F.3d 1195, 1201 (7th Cir.1994). But the nexus with interstate commerce, which courts frequently call the "jurisdictional element," is simply one of the essential elements of § 844(i). Although courts frequently call it the "jurisdictional element" of the statute, it is "jurisdictional" only in the shorthand sense that without that nexus, there can be no federal crime under the bombing statute. Kanar v. United States, No. 96-3621, slip op. at 5 (7th Cir. June 30, 1997). This court has recognized for decades that, despite defendants' tendency to "confuse[ ] facts essential to be alleged as elements of the crime with jurisdictional requirements arising as a matter of law," once a defendant pleads guilty in "[a] court which has jurisdiction of the subject matter and of the defendant, as did the court in the instant case," the court's judgment cannot be assailed on grounds that the government has not met its burden of proving so-called "jurisdictional facts." United States v. Hoyland, 264 F.2d 346, 352-53 (7th Cir.1959); LaFever v. United States, 279 F.2d 833, 834 (7th Cir.1960).
 
 
 8
 It is elementary that "a guilty plea is an admission of all the elements of a formal criminal charge[.]" McCarthy v. United States, 394 U.S. 459, 466 (1969). Consequently, Martin's guilty plea (which, after all, stipulated "that several utilities connected with [Bowyer's] residence ... were utilities which affected commerce or moved in interstate commerce") admitted the "so-called jurisdictional facts" necessary to establish the commerce element of a violation of the federal bombing statute. Hoyland, 264 F.2d at 352. By accepting the plea agreement, Martin waived any challenge to these facts.
 
 
 9
 A defendant does not, according to recent Circuit precedent, "waive the right to contest whether [the] facts [which he admitted] are sufficient to constitute a crime," when a change in the law changes the nature of the conduct deemed to be criminal. Stanback v. United States, 113 F.3d 651, 654 (7th Cir.1997) (Bailey challenge); but cf. United States v. Broce, 488 U.S. 563 (1988). Martin argues that under the rationale of Stanback, the guilty plea does not preclude him from challenging whether the nexus with interstate commerce was insufficient, under Lopez, to implicate the Commerce Clause. But the Supreme Court decided Bailey after Stanback pleaded guilty to "using or carrying a firearm." Lopez, on the other hand, was decided more than a year before Martin pleaded guilty. Thus, the law was established at the time Martin, who was represented by counsel, entered the guilty plea. It should have been apparent that the stipulated facts were intended to establish the commerce element of § 844(i). By not reserving his right to challenge whether, under Lopez, his conduct was sufficient to meet the commerce element of § 844(i), Martin has waived the right to raise a Lopez challenge on appeal.
 
 III.
 
 10
 Martin also contends that the court should have calculated his base offense level as 20, not 24. The Sentencing Guidelines establish a base offense level of 20 if a bombing created a substantial risk of death or serious bodily injury to someone other than the bomber, or endangered a dwelling. U.S.S.G. § 2K1.4(a)(2)(A), (C). If the bomber knowingly created a substantial risk of death or serious bodily injury, or if the bombing involved the destruction or attempted destruction of a dwelling, the base offense level is 24 U.S.S.G. § 2K1.4(a)(1)(A)-(B). The sentencing court's findings of fact at are reviewed for clear error. United States v. Hickok, 77 F.3d 992, 1007 (7th Cir.), cert. denied, 116 S.Ct. 1701 (1996).
 
 
 11
 Martin notes that the bombing damaged only the back door of the residence, part of the eaves and a refrigerator on the back porch. Consequently, he maintains, he merely endangered the dwelling. Martin stipulated in the plea agreement that he set off the bomb in order to scare Bowyer. Because Martin wanted only to frighten Bowyer rather than hurt him; because the bomb was small, untested and placed at a back door rather than by a bedroom or living room; and because the government failed to prove that Martin knew Bowyer was in the house (which was completely dark at the time he set off the bomb); Martin reasons that there was insufficient evidence to establish that he either knowingly created a substantial risk of serious bodily harm to Bowyer, or was trying to destroy rather than simply to damage the house. As a result, he concludes that he is entitled to a base offense level of 20 under § 2K1.4(a)(2).
 
 
 12
 Unfortunately for Martin, the government provided a different version of events, and the sentencing court believed the government. The sentencing court's credibility determinations are entitled to special deference. United States v. Pippen, Nos. 96-1145/1150/1892, 1997 WL 269147, at * 3 (7th Cir. May 20, 1997). In the conversation with Campton which the government recorded, Martin indicated that he set off the bomb. And, while Martin stipulated that he only intended to scare Bowyer, the government presented evidence that Martin had solicited people to beat Bowyer up, talked at work about blowing Bowyer up and told his wife before they separated that if she ever saw another man, he would kill the man. In particular, an ATF agent testified that Martin admitted to his supervisor at work that he knew Bowyer was at home when he detonated the bomb. Martin denied saying any such thing and complains that the government failed to prove that he made the statement because it never called the supervisor to testify.
 
 
 13
 But sentencing depends on proof by a preponderance of the evidence, not proof beyond a reasonable doubt. United States v. Edwards, 105 F.3d 1179, 1180 (7th Cir.), petition for cert. filed, (April 21, 1997). Moreover, "[t]he rules of evidence do not apply and the sentencing judge is free to consider a wide range of evidence, including hearsay." United States v. Windom, 82 F.3d 742, 747 (7th Cir.1996). The sentencing court believed that the ATF agent's hearsay evidence was reliable, credited her version of events, and disbelieved Martin. The district court's choice among the competing credibilities of the various witnesses cannot be clearly erroneous if both sides present permissible views of the evidence. United States v. Green, Nos. 95-3235/4050, 96-1729/2545/1057/2558, 1997 WL 269144, at * 6 (7th Cir. May 19, 1997); Anderson v. City of Bessemer City. 470 U.S. 564, 574 (1985).
 
 
 14
 Under the language of § 2K1.4(a)(1), the inquiry is not whether Martin intended to harm his victim: it is whether Martin knew that his actions created a risk of harm. United States v. Altier, 91 F.3d 953, 956 (7th Cir.1996) ("knowingly" is not the same as "purposefully"). If Martin intentionally detonated a pipe bomb at the back door of the house, knowing that Bowyer was asleep inside, that is enough for the court to conclude that he knowingly created a substantial risk of harming the victim. In the case at bar, the evidence as a whole does not show that the court clearly made a mistake in concluding that Martin knew the bomb might seriously harm Bowyer. United States v. Gabel, 85 F.3d 1217, 1221 (7th Cir1996). The court correctly assessed Martin's base offense level at 24, under U.S.S.G. § 2K1.4(a)(1).
 
 
 15
 We have not been persuaded that we may overlook a guilty plea--particularly one containing a stipulation with respect to the effect on interstate commerce--as establishing the so-called "jurisdictional facts." Moreover, the evidence supports the district court's finding that Martin knew the occupant of the dwelling was at home when he planted the bomb, and therefore knowingly created a risk of death or serious bodily injury. Therefore, the court correctly calculated Martin's base offense level under U.S.S.G. § 2K1.4(a)(1).
 
 
 16
 AFFIRMED.
 
 
 
 [1]
 18 U.S.C. § 844(i) provides in pertinent part:
 Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned for not less than 5 years and not more than 20 years, fined under this title, or both[.]